[Crim. No. 2292. Third Dist. Nov. 7, 1951.]

THE PEOPLE, Respondent, v. KENNETH LEWIS
CUNHA, Appellant.

Ray Manwell and Clewe, Martin & Blade for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and Wallace G. Colthurst, Deputy Attorneys General, for Respondent.

PEEK, J.—This is an appeal from a judgment of conviction of robbery in the first degree and from the order of the trial court denying defendant's motion for a new trial.

In view of the substantial evidence in support of the verdict of the jury the defendant, quite properly, does not question the sufficiency thereof. His attack upon the judgment, which is entirely without merit, is directed solely at certain alleged errors of the court in the conduct of the trial. Although, as stated, no question is raised as to the sufficiency of the evidence, it would appear that for a proper understanding of the case a brief summary of the pertinent facts is necessary.

Such facts, viewed in the light most favorable to the prosecution show that about the hour of 12:30 o'clock a.m. on October 28, 1950, defendant and one Janes entered a tavern in Yuba City. Defendant, armed with a gun, ordered those in the bar to put up their hands and the bartender to give him the money from the cash register. He then backed out of the door with his accomplice Janes, who had been keeping watch. All of the seven persons in the bar at that time (with exception of the witness Drew), the accomplice Janes, and one Vasco, who was waiting for them in the car, identified defendant and testified that he took the money. Drew was a next door neighbor to defendant who recognized him at the time of the holdup and so stated to the other persons in the bar, but when called as a witness at the second trial expressed doubt as to the identity of Cunha. Following the robbery Cunha, Janes and Vasco drove to San Francisco and returned to Oroville on Sunday. A Mr. Schachter, a San Francisco

clothing merchant, identified Cunha, Vasco and Janes as having been in his store at an early hour on a Saturday morning in the latter part of October, 1950, at which time he sold clothing to two of them. The witness was positive in his identification, first, because he specifically recalled that the three men were in a hurry, and secondly, because during the course of the transaction he lost $5.00, a circumstance which apparently ordinarily did not occur in the usual course of his business. Although the defendant denied having been in the clothing store he admitted that he received a traffic ticket for the overtime parking of his automobile on Saturday morning, October 28, at a point approximately a block and a half from the clothing store.

The defendant's position and testimony was that he had no part in the robbery; that he did not know Janes, and that he was not with him or Vasco on the evening in question. He further testified that no one was with him when he left for San Francisco on the evening of the robbery, and that he did not return to Oroville until the following Sunday. In corroboration he produced witnesses who testified that Vasco and Janes were not with him as late as 10 o'clock on Friday evening, and that his car was seen near Marysville around 11 o'clock p.m. on Friday. A mechanic on duty at a Sacramento gas station testified that on the evening of October 28 the defendant came into his service station and tried to sell him the car he was driving. A waitress from a restaurant located on Highway 40 between Fairfield and Vallejo testified to talking to defendant on a Friday night but she could not recall the date.

It is defendant's first contention that the trial judge erred when, at the conclusion of the case, he commented on the evidence, for the reason that such comment did not include a fair statement of the facts or testimony.

It is true, as defendant contends, a judge may so state a case that the jury could not help but be convinced that the court was of the opinion that the defendant should be convicted. Yet without something more specific than a declaration to that effect (see *People* v. *Hooper*, 92 Cal.App.2d 524 [207 P.2d 117] ) this court could not blindly agree with counsel and conclude that such were the circumstances in the present case. It does not appear necessary to quote in its entirety the rather lengthy document. Suffice it to say that we have read the entire charge and find no place therein where

the court inferred, either directly or indirectly, how the testimony should be resolved. On the contrary the jury was specifically told that in the final analysis what evidence was to be believed and what was to be discarded was solely the obligation of the jury under the facts. Furthermore, it was told by the trial judge, *"I do not favor either the people or the defendant. If any remark of mine or act or conduct on my part, has suggested to you that I favor either party, you will dismiss such suggestion entirely and disregard it entirely in arriving at your verdict."* Taken all together the attacked comments of the court appear to have been free from contentiousness, partisanship or advocacy. (*People* v. *Hooper, supra,* at page 530.)

 Defendant next contends that the court erred in admitting evidence of a conversation occurring during his first trial. It appears from the record that the witness Drew, who was in the bar at the time of the alleged holdup, was a neighbor of the defendant and identified him at that time. He also identified him at the first trial. However, at the second trial, when he was again called by the prosecution, he expressed doubt as to the identity of the defendant and explained his changed testimony by stating that since the first trial a doubt had arisen in his mind. On further examination it was brought out that during the first trial the defendant's mother had threatened him and Turner. When Turner was called as a witness the objections by counsel for defendant to questions asked of him concerning such conversation were without exception sustained by the court, but the objections were overruled as to any remark addressed to the witness Drew. The prosecution then asked, without objection by defendant, as to the specific words used by Mrs. Cunha, and the witness replied, "I don't know, she says, 'I hope you people are satisfied.'"

Defendant's argument in support of his contention is that such testimony was hearsay and should not have been admitted. It does not appear from the record that such testimony was offered to prove the truth of Mrs. Cunha's threatening statements but to show in fact that the witness Drew had been intimidated and to explain his obvious nervousness and hesitancy in identifying the defendant at the second trial.

 The lone statement so attacked by defendant, even if improper, does not appear to have been so prejudicial to him as to warrant a reversal.

The defendant next charges that the court erred in refusing to place in evidence a photograph alleged to be of the accom-

plice Vasco taken some time prior to the robbery. Defendant contends the picture demonstrated that Vasco was wearing a suit similar to the one the prosecution claimed was bought by him while in the company of the defendant at the witness Schachter's clothing store in San Francisco on the day following the robbery. When the photograph was shown to Vasco he was asked if it was his picture and he replied that it looked like him but he could not remember having it taken. He also testified that although the suit of clothes shown was similar to the suit he bought in San Francisco it was not the same suit. Janes testified substantially in the same fashion and added that the lapels of the coat were different. Mrs. Durant, a witness for the prosecution, in her testimony on cross-examination, stated that the picture looked like Vasco, whereupon defendant offered the photograph in evidence but the court sustained the prosecution's objection thereto.

It is the well established rule that the question of the sufficiency of the preliminary proofs offered to identify a photograph or to show that it is a fair and accurate representation of the objects which it purports to portray, is a matter within the sound discretion of the trial court. (*People* v. *Doggett*, 83 Cal.App.2d 405, 409 [188 P.2d 792].) Not only did the evidence in the present case fail to sufficiently show that the photograph correctly reproduced the suit being worn by Vasco but furthermore no evidence was introduced as to where, when or by whom the photograph was taken nor was any offer of such proof made following the court's sustaining of the prosecution's objection to the introduction thereof. Under such circumstances this court cannot say that the trial court abused its discretion in refusing to admit the photograph in question in evidence.

Defendant's next contention that the court improperly limited the cross-examination of the accomplice Vasco, is also without merit. The record shows that defendant's original cross-examination of Vasco consumed approximately 37 pages of transcript; that subsequently he was recalled at the request of defendant for "one more question" and that such examination consumed six more pages of transcript. When the witness was first cross-examined he was fully questioned as to the alleged robbery, the details of the trip to Sacramento and San Francisco following the robbery, and his retraveling of the same route in the custody of the police officers following his apprehension. During such cross-examination defendant sought to impeach the testimony the witness had given at the

second trial by that given at the first. When Vasco was subsequently recalled as a witness at the request of defendant he was again asked concerning testimony given at the first trial. The prosecution objected upon the ground that it was not proper cross-examination in that it had already been asked and answered. The reply of the court, which is the basis of defendant's contention, was, "I will allow the question; it was practically covered; it is not impeachment anyway." No objection was made by defendant's counsel to this statement by the court and he continued with his questioning of the witness, at the conclusion of which he stated that he had no further questions to ask. Examination of the record shows that the question which brought forth the now attacked comments of the trial court was the identical question asked in his original cross-examination. Furthermore there appears to be no contradiction between the answers given by the witness the first time the question was asked and the answers given when he was recalled. Under such circumstances this court cannot say that the defense was unduly restricted in its cross-examination particularly since the State's objection was overruled and the cross-examination allowed to continue. And secondly, since the answers given by the witness were practically identical the comment of the court that the same was not impeachment was correct. Even if it be assumed that the court's comment was incorrect, yet, in view of the circumstantial evidence against the defendant, one isolated comment such as defendant herein attacks, could not be said to be so prejudicial as to warrant a reversal of the judgment.

Appellant further contends that the trial court erred in allowing a police officer to be recalled as a witness and to testify in rebuttal concerning his conversation with the defendant immediately following his apprehension. His argument in support thereof was that such testimony related to vital matters which should have been covered by the prosecution's case in chief and that it was not a proper evidence in rebuttal. However, his only objection thereto was that the proper foundation for the conversation had not been laid. The officer, when recalled, testified that he disclosed to defendant the evidence against him, including the identification witness, and that he advised him to admit the offense; that defendant in his reply questioned such procedure because he was then under probation in Yuba county.

On cross-examination the witness stated the reason he had neither mentioned the particular conversation with defendant

or his reply thereto was that when the witness was first called he had been asked no question in that regard. The witness further stated that at no time during such conversation did the defendant confess to the commission of the crime. ▮ While the order of proof rests in the sound discretion of the trial court (Pen. Code, §§ 1093 subd. 4, 1094) nevertheless as the court observed in *People* v. *Avery*, 35 Cal.2d 487, 491 [218 P.2d 527], abuse of that discretion may well result from allowing a district attorney, by way of rebuttal, to bring in evidence that should have been introduced in the prosecution's case in chief. ▮ However, in the present case, Cunha was recalled and permitted, in answer to Meyers' testimony, to explain his reference to his probation in Yuba county. Hence we are confronted with a situation not wholly dissimilar to that presented in the Avery case, where the court, in answer to a question identical to that now raised by defendant herein, held that "Under these circumstances it cannot be said that the ruling put [defendant] to such disadvantage as to require a reversal."

▮ Defendant's next contention relates to comment by the district attorney that a deputy sheriff of one county had no authority when retained as a private investigator in another county to investigate on behalf of the defendant concerning an offense charged in the latter county. The record shows that when appellant objected to such statements by the district attorney the trial judge remarked that he believed the district attorney had a right to so argue and that also he believed it to be the law that the deputy sheriff under such circumstances was exceeding his duty. The court then stated: ". . . I will instruct . . . the Jury to disregard the statements in that regard," and following a statement by the district attorney that he said all he was going to say, the court concluded, "Very well. The Jury will disregard it." It is evident that the statement concerned a collateral point and did not bear upon appellant's guilt or innocence; that the trial judge stated he was not sure about the validity of counsel's statements and that he would, and in fact did, instruct the jury to disregard the statements. Again, it cannot be said that the alleged misconduct was either so flagrant or otherwise prejudicial that neither a retraction nor an abandonment could destroy its influence.

▮ Lastly it is defendant's contention that the trial court erred in allowing the district attorney in his examina-

tion of witnesses concerning the identification of appellant to ask if such witnesses could "positively" or "absolutely" identify the defendant. In support of such contention defendant quotes from and relies upon the statement appearing in Jones' Commentaries on Evidence, volume 2, page 873, where it is stated in part that "it is not necessary for [a witness] to speak positively as to the identification. His testimony according to his belief, is all that can be called for. . . ." The only reasonable interpretation which can be given to the quoted statement is that a witness cannot testify to any greater degree of positiveness than as is his own best knowledge or belief. Obviously within such a rule there may be positive identification as well as identification of a lesser degree within which there may well be a degree of uncertainty. In other words, if he is not liable to positively identify the subject then "The uncertainty of his recollection or his lack of positiveness about the identity of the persons involved [goes] to the weight and not to the competency" of the evidence. (*People* v. *Avery, supra,* at page 492.)

The judgment and order are affirmed.

Van Dyke, J., and Schottky, J. pro tem., concurred.