[Crim. No. 655. Fourth Dist., Jan. 28, 1948.]

THE PEOPLE, Respondent, v. BENJAMIN F. DOGGETT et al., Appellants.

Harry M. Umann for Appellants.

Fred N. Howser, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendants were charged with the violation of section 288a of the Penal Code and, in a second count, with the violation of section 286 of that code. A jury found them guilty on both counts and they were sentenced

accordingly, the sentences to run consecutively. A motion for a new trial was denied and each defendant has appealed from that order and from the judgment.

The defendants, who are husband and wife, occupied a furnished apartment in Indio. They also carried on from this apartment a business under the name of "Artistic Studios." As a result of an investigation carried on by the postoffice department a police officer, with a search warrant, went to this apartment to search for obscene pictures and photographic equipment. He found a lot of such equipment, and facilities in the kitchen for developing pictures. He also found several boxes of pictures, among which were a number which were introduced in evidence in this action. These pictures apparently showed the defendants in certain positions in this apartment. One of them, if genuine, pictures the defendants in the act of violating section 288a. This was introduced as Exhibit 6. The next day the officers took some pictures in this apartment, which were also introduced in evidence, showing various furniture, articles and surroundings in the apartment which correspond exactly with the same furniture, articles and surroundings as they appear in the other pictures.

It appears that the defendant Mauree Doggett was charged, in a prior proceeding, with a violation of section 288a only. She was arraigned and informed of her constitutional rights. Thereafter, she was shown the photographs relating to this offense which were found in the apartment, and certain other evidence, and expressed a desire to admit the charge. She was taken into the justice court where, under oath, she admitted her guilt and testified that Exhibit 6 was an actual photograph taken while they were living in the apartment. For some reason which does not appear that proceeding was then dismissed and the present joint proceeding was begun.

At the preliminary hearing in this proceeding the pictures in question were introduced in evidence over the objection of the defendants. The landlord of the apartment house positively identified the two people appearing in these photographs as being the defendants and testified that these photographs were a fair and faithful representation of the interior of this apartment and of certain furniture and articles therein at the time in question, but testified that he had never seen the defendants conduct themselves in the manner portrayed in the photographs and that he could not say that these were a fair representation of what actually took place when the photo-

graphs were taken. An officer testified that he took the other photographs in this apartment, and that these fairly disclose certain furniture, articles and surroundings therein. It clearly appears that the physical objects appearing in both groups of photographs are the same.

The defendants were held to answer and later, in the superior court, moved to dismiss both counts of the information under section 995 of the Penal Code. This motion was denied, whereupon the defendants declined to plead. A plea of not guilty as to each count was entered by the court and a trial before a jury followed.

At the trial similar evidence was received fully establishing the period of time during which the pictures were taken, the place where they were taken, and identifying the persons shown in the first group of photographs as the defendants. Also that certain fixtures in the kitchen of this apartment had been used for developing pictures, and that photographic equipment and these pictures were found in the apartment. One group of these pictures, and particularly Exhibit 6, if accepted as genuine photographs, fully and completely disclose a violation of section 288a by the defendants. Another group of these photographs would justify an inference that the defendants, at the time the pictures were taken, were violating section 286, but would not conclusively establish that fact. There was also testimony by an expert witness, with long experience in the photographic field, who gave his opinion that these were not composite or faked photographs. He gave his reason for this opinion in detail and his evidence was in no way discredited by the cross-examination. He testified, giving good reasons therefor, that certain physical elements in the photographs themselves clearly disclose that they were taken by one of the defendants who appear therein, and that they were genuine photographs which could not have been built up or faked. The photographs were introduced in evidence. The court reporter's transcript of the former proceeding in the justice's court covering the confession and statement made by the defendant wife at that time was read in evidence, being admitted only as against that defendant. The defendants put in no evidence and did not take the stand except that the defendant wife testified on *voir dire* in an effort to prevent the introduction of her former confession and statement, it being claimed that she had made these statements by reason of a threat and under a promise of partial immunity. The defendants were convicted on both counts and this appeal followed.

While it is not disputed, and could not be, that some of these pictures, if they are genuine photographs, clearly and completely show a violation of section 288a by these defendants it is earnestly contended that these photographs were not sufficiently verified or authenticated to make them admissible into evidence, and that without them the corpus delicti was not established and there is no evidence in the record showing that this offense was committed. It is argued that while the witnesses were able to identify the furniture and surroundings depicted in the pictures as being those in this apartment, and the people shown in the pictures as being the defendants, they were not able to, and did not, testify of their own knowledge that they had seen the offense committed, or that the pictures fairly represented things which were actually being done in the apartment at the time the photographs were taken.

The main question presented, insofar as the violation of section 288a is concerned, is as to whether a sufficient foundation was laid to justify the admission of these photographs into evidence. The appellants rely on the usual rule that in order to be admitted photographs must be verified or authenticated by some other evidence. No case directly in point here has been cited, but it is argued that no cases are to be found in which it has been held that authentication by other evidence is not necessary. While this is true, it is equally true that no cases are to be found in which it has been held that the essential element must be proved in a particular manner and can be proved in no other. In section 730, 20 American Jurisprudence 610, it is said: "The question of the sufficiency of the preliminary proofs offered to identify the photograph or to show that it is a fair and accurate representation of the objects which it purports to portray is a matter within the discretion of the trial court."

The general rule is that photographs are admissible when it is shown that they are correct reproductions of what they purport to show. This is usually shown by the testimony of the one who took the picture. However, this is not necessary and it is well settled that the showing may be made by the testimony of anyone who knows that the picture correctly depicts what it purports to represent.

The essential element is that it be shown in some way that the picture does correctly depict what it purports to show, in other words that it be verified or authenticated as a genuine picture of what it purports to depict. This being the purpose

it is not required that the photographer himself be produced where other evidence is available to accomplish the same end. The effect and probative value of such other evidence is the important consideration, and not that the way or manner of making the requisite showing should be exactly the same in all cases.

There is no reason why the essential element should not be shown in a particular case by other evidence which varies somewhat from the usual pattern, provided it is sufficient to give an equally satisfactory result. There is no reason why it should not be shown by the testimony of witnesses, assisted by other matters, including those which are an inherent part of the picture itself, aside from the relative matter which it purports to depict, provided these other or inherent matters reliably appear and provided that they, with the testimony, sufficiently disclose the authenticity and genuineness of the photograph.

 Where parties have the equipment for and are carrying on a business of producing photographs in an apartment in which they are living; where such equipment and such photographs as these are found in that apartment; where it is conclusively shown by other testimony that these pictures correctly represent and depict the parties who occupy that apartment and the surroundings, furniture, pictures on the walls and other articles which are shown to have been in and to have been a part of that apartment at the time in question; where there is unimpeached expert testimony, supported by sound reasons, that the camera which took these pictures was operated by one of the parties appearing in the pictures and living in the apartment; where there is unimpeached expert testimony that the pictures themselves contain physical elements which are pointed out, which disclose that they are not "composite" or "faked" photographs but are genuine photographs and "contact prints" made from "straight photograph" negatives; and where there is an entire absence of anything which might tend to raise the slightest doubt about the matter, it would seem that the verification or authentication was as satisfactory and reliable, to say the least, as that in the ordinary case where it depends upon the memory and integrity of a third party who may be directly interested in the result. In such a case, it can neither be said that other evidence is entirely lacking nor that proof of the requisite element is not sufficient to support a trial court's action in receiving such pictures in evidence.

That is the situation existing here. It was rather conclusively shown that these were actual and genuine photographs, taken by one of the defendants themselves. There was nothing to justify a contrary inference and no other possible explanation either appears or was attempted. Under these particular circumstances it must be held that a sufficient showing was made in this regard and that these photographs were properly admitted into evidence.

Insofar as the defendant wife is concerned, in connection with the violation of section 288a, there was also evidence of her prior admissions and testimony under oath that Exhibit 6, which clearly shows the consummation of the act by these defendants, was a true picture which was actually taken while they were occupying this apartment, and that she had at that time committed the act shown in the picture. This evidence was admitted only as against her and the jury was instructed not to consider it as against her husband.

It is contended, however, that this evidence was not admissible even as to her because the confession and statements were not voluntarily made but were induced by a threat and a promise of partial immunity made to her by the deputy district attorney. Mrs. Doggett testified in this connection that before going over to the justice's court the deputy district attorney told her that he had other charges which he could bring; that if she did not plead guilty the other charges would be brought; that if she pleaded guilty no other charges would be brought and she would have a chance to get out right away; that she was told she would get probation; that she was taken immediately to the justice court; and that she made the statements and gave the testimony there "because I thought—felt sure I was going to get released, and that is why I did it." On cross-examination, she was evasive in answering a number of questions concerning what had been said to her by the district attorney. Again, when asked whether she had not testified freely and voluntarily in the justice's court she replied "Well, I answered the questions you asked me." She also admitted that she went over to the justice's court and testified there because she "thought that was the best thing to do." The deputy district attorney denied that he had told Mrs. Doggett that he would not file other charges if she pleaded guilty to a violation of section 288a, or that he had told her anything to that effect. He testified that he had shown her the pictures and certain letters and that she had asked him

whether other charges would be brought; that he told her that they had evidence of other charges which could be brought but made no statement in any manner whatever that other charges would not be brought; that after seeing the pictures she asked him what he thought was the best thing for her to do; that "I told her that I thought the best thing for her to do was to go into court and admit the truth, and to apply for probation"; that she asked him what this meant and that he told her that this meant that she would be taken into court and given the privilege of admitting the charge of violating section 288a, that if she admitted this and pleaded guilty in the superior court the matter would be referred to the probation officer who would make an independent investigation and report to the judge, and that, based on that report, the judge would exercise his discretion in what kind of sentence he would give her.

The matter of whether or not these admissions were voluntarily made was first passed upon by the trial judge and then submitted to the jury on complete and appropriate instructions. The conflict in the evidence was decided against this defendant by the trial judge and the jury, and no reversible error appears in this connection. (*People* v. *Sameniego,* 118 Cal.App. 165 [4 P.2d 809, 5 P.2d 653].)

██ A somewhat different situation appears with respect to the charge of violation of section 286, under the second count of the information. The general situation with respect to the introduction of evidence and the amount of evidence received is the same on this count as on the first count. On this count also the photographs which were admitted constitute the only evidence received which might indicate the guilt of the defendants on this charge, or which bears directly on that issue. A number of pictures were introduced in this connection and the original exhibits are before us. Unlike those involved in the first count these pictures do not clearly or definitely show a violation of section 286. While they are suggestive of that, and while they might justify an inference to that effect, this does not clearly or certainly appear. Moreover, we think this does not appear beyond a reasonable doubt. Several explanations are possible under which these pictures would not indicate that the defendants were guilty of this particular offense. The result is that there was no satisfactory evidence of guilt on this charge and that proof of guilt rests only on one of several possible inferences and on surmise and conjecture.

It follows that the conviction of the defendants on this second count cannot be sustained.

A number of other points are raised which require little attention under our views with respect to the main ground of appeal. Aside from matters which relate merely to the order of proof, it is contended that the evidence at the preliminary examination was insufficient to justify holding the defendants for trial in the superior court; that the information was invalid since it was based upon an illegal foundation for the same reason; that the motion made pursuant to section 995 of the Penal Code should have been granted for the same reason; and that it follows that the superior court had no jurisdiction to proceed with the trial of the action. These contentions are based on the theory that these photographs were inadmissible and that no evidence was presented at the preliminary hearing which tended to connect the defendants with the commission of the crimes charged. These contentions cannot be sustained. The evidence at the preliminary hearing was sufficient to show reasonable or probable cause, which is all that was required. Aside from any other considerations, the other objections are without merit under the views above expressed.

The judgment and order are affirmed as to each defendant insofar as the first count is concerned, and on the second count are reversed as to each defendant.

Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 26, 1948. Carter, J., and Schauer, J., voted for a hearing.